

Itas

FILED

NOV - 4 2013

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: ) | Case No. 10-42050-D-7 |
| ) | |
| VINCENT THAKUR SINGH and ) | |
| MELANIE GAY SINGH, ) | |
| ) | |
| Debtors. ) | |
| _____ ) | |
| MICHAEL F. BURKART, Chapter 7 ) | Adv. No. 12-2497 |
| Trustee, ) | Docket Control No. CDH-001 |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| RONALD CHANDRA, ) | DATE: July 24, 2013 |
| ) | TIME: 10:00 a.m. |
| Defendant. ) | DEPT: D |
| ) | |

**RECOMMENDATION TO THE DISTRICT COURT WITH**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Chapter 7 trustee Michael Burkart ("plaintiff") has filed a motion

for entry of default judgment against defendant Ronald Chandra

("defendant"). The motion was noticed under LBR 9014-1(f)(1) and is

unopposed. The court submits to the district court the following

findings of fact and conclusions of law, pursuant to 28 U.S.C. §

157(c)(1).

**BANKRUPTCY COURT AUTHORITY**

Following the Ninth Circuit's decision in <u>Exec. Benefits Ins. Agency</u>

<u>v. Arkison (In re Bellingham Ins. Agency, Inc.)</u>, 702 F.3d 553 (9th Cir.

2012), *cert. granted*, 2013 WL 3155257 (June 24, 2013), bankruptcy courts

do not have constitutional authority to enter final judgments on

1 fraudulent transfer claims against non-creditors.  702 F.3d at 565.  The

2 Bellingham court, however, also held that a defendant's right to a

3 hearing in an Article III court is waivable.  Id. at 566.  "[A]

4 litigant's actions may suffice to establish consent" to adjudication by a

5 non-Article III court.  Id. at 569.  Here, defendant is neither a

6 creditor in the underlying bankruptcy case, nor was defendant

7 sufficiently active in the case to give rise to a finding of a waiver of

8 defendant's right to an Article III adjudication.  Accordingly, the court

9 does not have authority to enter a final judgment on the fraudulent

10 transfer claim asserted against defendant.  Thus, the court submits the

11 following as its findings of fact and conclusions of law, together with

12 its recommendation, to the district court. [1]

### ANALYSIS

14      A summons and complaint were served on defendant, who failed to

15 answer within the time provided under FED. R. BANKR. P. 7012(a).  On May

16 17, 2013, the clerk of the court entered an order of default against

17 defendant.  There are no other defendants in this matter.  Accordingly,

18 the well-pleaded allegations in plaintiff's complaint, except for

19 allegations regarding the amount of damages, are deemed admitted.  FED. R.

20 CIV. P. 8(b)(6).

21 / / /

22

23

24
[1]  In sum, § 157(b)(1) provides bankruptcy courts the power to hear fraudulent [transfer] cases and to submit reports and recommendations to the district courts.  Such cases remain in the core, and the § 157(b)(1) power to 'hear and determine' them authorizes the bankruptcy courts to issue proposed findings of fact and conclusions of law.  Only the power to enter final judgment is abrogated.

Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.), 702 F.3d 553, 565-66 (9th Cir. 2012), cert. granted, 2013 WL 3155257 (June 24, 2013).

- 2 -

1    Obtaining a default judgment is a two-step process.  See Eitel v.

2  McCool, 782 F.2d 1470, 1471 (9th Cir. 1986).  First, the clerk of the

3  court enters the default of the party who has failed to plead or

4  otherwise defend; the clerk or the court, depending on the nature of the

5  plaintiff's claim, then enters a default judgment.  FED. R. CIV. P. 55(a)

6  and (b), incorporated herein by FED. R. BANKR. P. 7055.  In this case, the

7  clerk, at the request of plaintiff, entered the default of defendant on

8  May 17, 2013.  Plaintiff's motion is for entry of default judgment

9  against defendant, pursuant to FED. R. CIV. P. 55(b).  Factors the court

10  must consider include the following:  (1) the possibility of prejudice to

11  the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the

12  sufficiency of the complaint; (4) the sum of money at stake in the

13  action; (5) the possibility of a dispute concerning material facts; (6)

14  whether the default was due to excusable neglect; and (7) the strong

15  policy underlying the Federal Rules of Civil Procedure favoring decisions

16  on the merits.  Eitel, 782 F.2d at 1471-72.  Resolution of disputes on

17  their merits is generally favored over default judgments.  See id. at

18  1472.

19    Similar, albeit differently articulated, considerations are involved

20  in the context of a court's exercise of discretion to set aside a default

21  judgment:

22    These considerations, are usually listed as (1) whether the
      default was willful or culpable; (2) whether granting relief
23    from the default would prejudice the opposing party; and (3)
      whether the defaulting party has a meritorious defense.  Such
24    considerations are, therefore, also appropriate considerations
      when deciding whether to render a default judgment.  This is
25    logical.  When faced with the decision concerning whether to
      render a default judgment in the first place, a court
26    logically should consider whether factors are present that
      would later oblige the court to set that default judgment
27    aside.

28  10 MOORE'S FEDERAL PRACTICE § 55.31[2] (Matthew Bender 3d. ed. 2012).

- 3 -

1    Pursuant to the Fourth Claim for Relief of the First Amended

2 Complaint, plaintiff alleges a fraudulent transfer claim under 11 U.S.C.

3 § 548(a)(1)(A).  In particular, plaintiff alleges that debtor, Vincent

4 Singh ("Singh"), made three payments to defendant totaling $14,500.00.

5 The payments consisted of cash, checks, or other forms of transfer

6 directly from Singh or indirectly from one or more accounts in Singh's

7 name, Malanie Singh, Perfect Financial Group, Inc., AAMCO Stockton, Inc.,

8 AAMCO Orangevale, Inc., OM L. Singh, John A. Singh, Usha D. Singh, and/or

9 third parties to or for the benefit of defendant.  The payments were made

10 as part of a Ponzi scheme perpetrated by Singh.  Defendant had invested

11 funds with Singh and received payments in connection with the amounts

12 invested.  Although Singh represented that he was making "hard money"

13 loans that would produce funds to be paid back to investors (including

14 defendant), the actual source of the payments from Singh was funds

15 invested by other investors.  Pursuant to the Fifth Claim for Relief,

16 plaintiff alleges that, under 11 U.S.C. § 550, he is entitled to recover

17 from defendant any property transferred from Singh by means of an

18 avoidable transfer.

19 **A.    Propriety of Entering Default Judgment (Eitel Factors)**

20    **1.    Possibility of Prejudice to Plaintiff**

21    Plaintiff will be prejudiced if default judgment is not granted.

22 Plaintiff, as trustee of a bankruptcy estate being administered in part

23 for the benefit of Ponzi scheme victims, is required to marshal a series

24 of transfers to numerous investors so that each investor can receive his

25 or her aliquot share of investment funds misappropriated by the

26 perpetrator of a Ponzi scheme.  Although it seems counterintuitive to

27 claw back funds redistributed to the victims by Singh, it is necessary in

28 ensuring the equality of treatment of similarly situated creditors.

- 4 -

1  Defendant's failure to respond in this action presents a delay that

2  reverberates through the bankruptcy case: plaintiff is prevented from

3  marshaling and accounting for investment funds that are to be distributed

4  on a pro rata basis.  Accordingly, plaintiff will be prejudiced.

5        **2.    The Merits of Plaintiff's Claims**

6        The following facts are taken as true given defendant's lack of

7  response.  As stated earlier, plaintiff's complaint alleges, inter alia,

8  a claim under 11 U.S.C. § 548(a)(1)(A) that the transfers to defendant

9  were made by Singh with an actual intent to hinder, delay, or defraud

10  defendant and other similarly situated creditors.  The court agrees with

11  plaintiff that Singh's conduct amounted to a Ponzi scheme, which is

12  sufficient to establish actual intent to defraud creditors within the

13  meaning of 11 U.S.C. § 548(a)(1)(A).  The "existence of a Ponzi scheme is

14  sufficient to establish actual intent under § 548(a)(1)."  AFI Holding,

15  Inc. v. Mackenzie (In re AFI Holdings, Inc.), 525 F.3d 700, 704 (9th Cir.

16  2008) (internal quotation marks omitted).

17        Plaintiff's complaint adequately alleges that Singh engaged in a

18  Ponzi scheme.  In furtherance of this scheme, Singh accepted investment

19  funds from defendant and other similarly situated investors.  From time

20  to time, Singh, whether directly or indirectly, distributed payments to

21  the investors as an illusory return on investment.  These illusory

22  returns constitute transfers of an interest in property of the debtor

23  within the meaning of 11 U.S.C. § 101(54)(D).  The well-pleaded facts

24  show that these transfers were made with an actual intent to hinder,

25  delay, or defraud defendant on or within 2 years before the date of the

26  filing of the petition.  Therefore, plaintiff's fourth claim for relief

27  is meritorious.

28  / / /

Although an exception to liability exists in 11 U.S.C. § 548(c) for a defendant who takes in good faith and gives new value, "the defendants' good faith is an affirmative defense under Section 548(c) which must be pleaded in the first instance as a defense by the defendants.  It is not incumbent on the plaintiff to plead lack of good faith on the defendants' part because lack of good faith is not an element of a plaintiff's claim under Section 548(a)(1)."  Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Grp., LLC), 362 B.R. 624, 639 (Bankr. S.D.N.Y. 2007).  As defendant has not filed a response in this action, defendant has not met the burden of proof required to successfully assert a "good faith" defense to plaintiff's fraudulent transfer claim.

Lastly, plaintiff's complaint adequately alleges that plaintiff is entitled to recover the transfers made to defendant.  "[T]o the extent that a transfer is avoided under section . . . 548, . . . the trustee may recover, for the benefit of the estate, the property transferred . . . from— (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made."  11 U.S.C. § 550(a)(1).    Therefore, plaintiff's fifth claim for relief is meritorious.

### 3.    Sufficiency of Plaintiff's Complaint

The court finds that plaintiff's complaint is well-pleaded and sets forth plausible facts—not just parroted statutory or boilerplate language—that show that plaintiff is entitled to the relief sought in the fourth and fifth claims for relief.  The complaint sufficiently alleges with particularity facts that show Singh engaged in an extensive Ponzi scheme of which defendant was a victim.  Pursuant to the scheme, defendant invested funds and also received certain transfers from Singh. The court is satisfied that plaintiff has pleaded the circumstances of the Ponzi scheme constituting actual fraud with particularity.  See FED.

- 6 -

1  R. BANKR. P. 7009, which incorporates FED. R. CIV. P. 9(b) (requiring a

2  party who alleges fraud to plead such fraud with particularity).

3  Moreover, plaintiff has pleaded facts that satisfy the elements of a

4  fraudulent transfer claim sounding in actual fraud.

5      **4.    The Amount at Stake**

6      Defendant is liable to plaintiff for a sum of money received via at

7  least three transfers from Singh.  The total amount of avoidable

8  transfers alleged is $14,500.00, subject to change if and when plaintiff

9  discovers other transfers made to defendant.  The amount at stake is not

10  a grossly large number, nor is it a nominal amount.  Plaintiff has

11  presented evidence showing that Singh made at least three payments to

12  defendant in the amount alleged.  This factor weighs in favor of a

13  default judgment.

14      **5.    Possibility of Dispute as to Material Facts**

15      Upon entry of default, all well-pleaded facts in the complaint are

16  taken as true, except allegations relating to damages.  Defendant has not

17  advanced any arguments showing material facts in dispute.  Given the

18  sufficiency of the complaint and defendant's default, there is no genuine

19  dispute of material fact that would preclude a default judgment.

20      **6.    Excusable Neglect**

21      Defendant was properly served with the summons and complaint

22  pursuant to FED. R. BANKR. P. 7004.  It is therefore unlikely that

23  defendant's failure to respond to the complaint was due to excusable

24  neglect.

25      **7.    Policy in Favor of Deciding on the Merits**

26      "Cases should be decided upon their merits whenever reasonably

27  possible."  Eitel, 782 F.2d at 1472.  As compelling a factor as this may

28  be, a decision on the merits is not reasonable in light of defendant's

NOV - 4 2013

1  complete inaction.  Defendant's lack of a response renders a decision on

2  the merits practically impossible.  Thus, the ordinary preference to

3  decide cases on the merits must yield to the granting of a default

4  judgment.

5  **B.     Damages**

6        The entry of a default judgment establishes the liability of the

7  defaulting party but the moving party still must establish the amount of

8  damages.  Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977).

9  "A court does not abuse its discretion by failing to hold a hearing [on

10 damages] when the amount of damages is liquidated or can be made certain

11 by computation based on the pleadings or information in the existing

12 record."  10 MOORE'S FEDERAL PRACTICE § 55.32[2][b].  In recommending an

13 award of damages here, the court relies on the copies of checks submitted

14 as evidence by plaintiff.  The total amount of transfers, according to

15 this evidence, is $14,500.00.

16       For the reasons stated, the court recommends entry of a default

17 judgment in favor of plaintiff, with damages in the amount requested in

18 the complaint.

19 Dated:     NOV - 4 2013

20                                          ROBERT S. BARDWIL
                                            United States Bankruptcy Judge

21

22

23

24

25

26

27

28

- 8 -